at all. Arguments not to exceed 15 minutes per side. Mr. Chang for appellant. Mr. Chang, good afternoon. Welcome to the Sixth Circuit. We're happy to have you here. We've obviously read your briefs, so you don't need to do anything with the formalities. You can just start. And we know you're reserving four minutes for rebuttal. Is that correct? Actually, Your Honor, I decided to reserve three minutes. Perfectly fine. So I've got that, and go ahead. Thank you, Your Honor, and may it please the Court, as you're aware, my name is Stephen Chang and I represent the plaintiff appellant in this matter, Cavalier Distributing Company, Inc. Your Honors, the Ohio Alcoholic Beverages Franchise Act was specifically enacted to protect distributors from the unfair practices of manufacturers, which includes the unilateral termination without cause of franchise relationships which existed for over a decade. And that is the exact case here. My client, who was the exclusive distributor of the foreign brewery's for more than 15 years, had a protected franchise relationship with those breweries until that brewery decided to obtain a new... Yes, Your Honor? Can I ask you something that's just a stumbling block for me and you can explain it? So you emphasize, especially throughout your opening brief, that your franchise is with the breweries, correct? And not the importers, so not Shelton Brands and not Lime, it's with the breweries in Belgium. Correct. I do not want to foreclose the opportunity that under the Ohio Alcoholic Beverages Franchise Act, it could actually be either or. No, I'm not disputing that, and your friend on the other side obviously pointed that out in their response. But what you emphasized is it's the manufacturer, meaning the manufacturer, the breweries. Correct. Okay, so let me ask the question. My question is, so they're not here. How can we, just as a preliminary matter, enjoin Lime when they are not the party that you have the franchise with? Well, respectfully, Your Honor, it is Lime who purported to terminate the relationship to begin with. So that might be a tortious interference claim, but just tell me where under the act or where or what case gives me the authority to enjoin someone that is a third party to the dispute. Someone not a party to the original agreement as you allege it, meaning the franchise. You and I have a contract. How can you enjoin either of my colleagues based on what you and I have? Well, Your Honor, the trial court had left open the possibility that there was an agency relationship. Yeah, but they said he correctly put that in a footnote and said you didn't present it and you didn't prove it. So that one we can set aside for now. I agree with you. If there's an agency relationship, we're talking about something completely different. But all I want to review is a preliminary injunction. Two things, Your Honor. First, we do not foreclose the opportunity that this court would actually hold that both the supplier or the alleged supplier as well as the foreign manufacturer are manufacturers under the act. You didn't argue that below, so you can't argue it here. Well, at the district court level, we did specifically emphasize the control test to be able to emphasize which person would be constituting the manufacturer. But the reality is in the United States, you need an importer in order to actually distribute the beers. The person who refuses to sell the beers at issue in this case, Your Honor, is Lime Ventures, not the foreign breweries. The foreign breweries cannot sell directly to my client because they need an importer under federal law. That doesn't answer it. Let's go back to my question. I understand everything about the law, at least as I understand it now. You can correct anything you want. What gives you the authority if your franchise is with the Belgian breweries to enjoin Lime? Or what gives us the authority, is a better question, to enjoin Lime, to enforce the franchise with you and the breweries? That's all I'm looking for, is what will help me help you? Your Honor, I would say that this court does have jurisdiction against Lime Ventures. Why do not dispute the fact that if the foreign brewery hasn't been served, an injunction couldn't specifically enjoin them, this court certainly has authority to be able to enjoin a party who is here in the case at the table today. What case gives me that authority, to enjoin a non-party to a contract, to enforce a contract? I don't have a specific case to be able to reference for you today, Your Honor. However, we would be able to supplement the briefs if this court requested to specifically address that issue. This is not an argument that was presented by opposing counsel, so I would respectfully ask that we be allowed that opportunity if this is a pivotal issue for the court. I'm a little confused, and maybe just following up some unjudged-the-pars questions. The lower court, in its decision, and I'm reading off of page 11 here, seems to say that there was no dispute that Sheldon Brothers was and Lime is a manufacturer of those products. So I thought that your argument was that there were multiple manufacturers and that there were multiple franchise relationships. Are you only arguing that there's a franchise relationship with the Belgian breweries? That is our argument, that the franchise relationship was with the breweries themselves as the manufacturers of the beer. In this case, the scenario has been addressed multiple times, at least once by an Ohio court and once by a federal court. The two cases at issue which we reference in our briefs are specifically Belvino as well as St. Killian. In Belvino, an exact same situation is here. A foreign brewery had changed importers. That importer, Empson, attempted to break off the franchise relationship between the distributor and the brewery, and the 8th District Court of Appeals in Ohio from 2012 said no. In its decision, the court expressly held that El Molino, as the creator of the wine, was considered a manufacturer under Ohio law, and therefore the plaintiff in El Molino had a manufacturer-distributor franchise relationship. Your Honor, I guess if you did want a case in which this court would have authority to do that, I would say look to the Belvino case. In that case, it held that not only that the foreign brewery had violated the OAFBA, but also the importer who had purported to terminate that franchise relationship and enjoin them. Also, if you look to St. Killian, Judge Marbley of the Southern District of Ohio was faced with another very similar situation in which the court held that when an importer changed, they could not terminate the plaintiff's franchise agreement with a foreign brewery. In that case, the court again issued a preliminary... I'm going to ask your friend on the other side about those cases because I do think they help you more than your friend paints. But let me ask you, in those cases, as I understand it, at least as I read the cases, it was the manufacturer who was in many instances changing the importer. One tricky thing here is the importer goes bankrupt. So it's a little different in kind. It's not like if you had a franchise with a manufacturer and they were in front of us, I agree with you. If you had made the agency argument, I might even agree with you. If you had made the successor manufacturer argument below, I might even agree with you. But none of those are in front of us. So what you're left with is this weird posture where the company goes bankrupt through no direction of the manufacturer and a new importer comes in. The other distinguishing factor, as your friend points out in their brief, between those cases and this one is how much control and authority Shelton Brands exercised. You should answer those points while you're arguing those cases. Yes. I'd like to address them separately. First, addressing the bankruptcy and whether it's a similar situation, and second, going to the issue of control. As to the bankruptcy, I would say this isn't a different situation, Your Honor. So although Shelton Brothers declared bankruptcy, it wasn't through the bankruptcy that Lime Ventures got their rights. Actually what occurred is that the breweries changed importers to Lime Ventures and executed a contract. So that is not a distinguishing factor from those cases to this case. It just so happens that Shelton Brothers declared bankruptcy. One of the things the courts looked at in those was the control, like the Anheuser-Busch situation where they're worried that a manufacturer, meaning the breweries, could just wield authority by changing importers. They could change the wholesalers and distributors. Right. So the authority here, it's undisputed. The only evidence at the trial court level is that the breweries retained ultimate control. They testified nearly a dozen times that this is an at-will relationship. They could change and terminate Lime Ventures tomorrow. They can change and terminate Lime Ventures because they don't like the distributors. If this court rules that the only manufacturer is the importers, then that effectively gives the foreign breweries impunity to simply be able to eliminate franchise relationships by changing their importers. Now my colleague has focused on the provision of the statute which specifically says that declaring bankruptcy somehow terminates the franchise. You shouldn't waste your time with that. Your reply brief was spot on unless either of you'd like to hear it. Thank you, Your Honor. Then I will not. Yeah. You don't have much time left. Will you address just the second question I asked? On the issue of control, Your Honor? No. Maybe it was, I'm sorry, maybe I've got it backwards. The first one about, now I can't even remember it myself. Well, what about one, do you have a question? Please go ahead first. The successor manufacturer, I'm correct, you didn't raise that below, right? The first time I saw it was in your reply brief and I did see where you disclaimed it at one point below. Correct. Because they've never claimed that they could be a successor manufacturer because they blew the time frame to be able to do that. They didn't provide notice within 90 days to be able to terminate it. That's why they haven't presented it as a defense. Then why wouldn't you raise it? Because if they didn't provide the notice, then I thought that in order to your benefit. No. Because that is a safe harbor that they would be allowed to terminate. We don't raise it because that... Only if they terminate within 90 days. Right. But since they didn't comply with it, we don't need to argue that they're not a successor manufacturer because they never availed themselves of that. That's why we didn't present that. Counsel, as I read the Ohio law, it's largely talking about contractual relationships, right? The manufacturer who's either the person who makes the beer or supplies the beer or alcoholic beverage is supposed to have a written contract with the distributor. And if there isn't a written contract, the statute tells us if you've essentially been acting like you have a contract for 90 days, we're going to imply that one is there. Correct. How does it make sense that we're implying a contract between two parties that don't intend to be working with each other, have never spoken, don't even know their address, aren't able to serve them? How does it make sense to depart so far from the common law on our basic understandings of contract? Well, Your Honor, at least one court in Ohio has recognized that even in the absence of a direct relationship, you can still have a franchise relationship, and that is the Bovino case. In the Bovino case, the plaintiff who is a distributor was the distributor. Epson was the importer who purported to terminate the franchise relationship. And then El Molino was the foreign wine manufacturer. I know it may seem a little bit odd, but because of the way that the federal law works, you need and are required to have an importer. So it certainly is anticipated that these foreign breweries would have a relationship with local distributors in the United States. Yes, although in that case, we kind of took the relationship, that manufacturer-distributor relationship, and we're just asking if some corporate restructuring kind of changed who was in this relationship. And we said, no, just kind of moving around the corporation, again, this is the Ohio Court of Appeals, not us, isn't going to be enough to break what was already recognized. We don't have that here. Respectfully, Your Honor, the successor manufacturer analysis came after the court had actually determined that the franchise relationship was between the distributor and the breweries. If you look at the decision, the court had specifically held that they, as the maker of the wine, was the manufacturer. There was a protected franchise relationship. Then the court went on to the defense because they tried to avail themselves of the safe harbor and said, you don't qualify as a successor manufacturer because of these reasons. But the decision that there is a relationship between the winery and the distributor that was protected came first. Thank you, Your Honors. If you're taking the position that Shelton and Lime are not manufacturers or suppliers under the Act, you're saying that the only constraint on their ability to terminate is through the breweries? I mean, this somewhat relates to Judge Tappar's earlier question, but if there are no statutory constraints on them, what, their obligation stems from the breweries' obligation? I'll confess, Your Honor, I'm not 100% sure of what the question is. Are you asking whether... Well, you're contending that the breweries are the only manufacturers here. Are the manufacturers here, correct? Well, you also said the only ones. The only manufacturers here, correct. Okay. So what are the constraints on Lime? What would have been the constraints on Shelton? Simply not to interfere with that franchise relationship? To continue to sell the beer to my client, Your Honor. They cannot terminate the franchise relationship. Well, but that obligation is not on them. You're saying it's on the breweries. So what's the... Do you understand what I'm asking? You're positing that the breweries are the manufacturer. Correct. And that the importer is not. You're saying the importer is not. In this circumstance, no. Okay. So what is the legal obligation that the importer has with respect to the distributor? I see, Your Honor. If they won't sell to us, they can't sell to other individuals, which is the case here. They have to recognize the franchise relationship. We have an exclusive distribution... We have exclusive distribution rights in the state of Ohio. If the importer won't sell to us, they can't do what they did here. It's basically a tortious interference claim. Is that what you're saying? It would be a tortious interference claim, yes, if they did sell to someone else. Okay. But it's not under the statute. Unless it was a decision by the breweries or they were acting on behalf of the breweries, then it would actually be a breach of contract claim. Okay. Thank you. Thank you, Your Honor. Thank you, Counsel. You have your full rebuttal time. Thank you, Your Honor. Mr. Donovan? Thank you, Your Honor. If you don't mind, I'm just going to adjust this a second. Good afternoon. May it please the Court, my name is Ryan Donovan. I represent the appellee, Lime Ventures, Inc. in this matter. The appellant would have you believe that we are here today to decide the fate of the beer industry in Ohio and that if the lower court decision is allowed to stand, I will have serious reverberations throughout this industry. That is plainly not true. It is not consistent with the decision issued by Judge Cole. On the other hand, if this case is reversed, there will be serious reverberations, not through just the beer industry, but through the legal industry and through the definition of jurisdiction and due process. All right, Counsel. We just filed a law, so whatever the reverberations are isn't really our issue, so let's talk about the law. I had that question about successor manufacturer and I just want to understand it because it seems I'm misunderstanding it. Assume you're a successor manufacturer. I know this wasn't raised below, so you don't have to worry about it, but I just want to understand why this theory doesn't fly. Assume you're a successor manufacturer. Don't you only get 90 days to terminate and if you don't, don't you become like Shelton at that point? Under hypothetical, yes, sir. Okay. That's what I thought, but the other side disowned that theory, so I just wanted to understand. That's my understanding of the statute, Your Honor, and the implication. So it's not a pure safe harbor. You only get 90 days. You agree that 90 days is run, so if you were a successor manufacturer, you would be bound? If that were the case, I believe that you would be right, Your Honor. Okay. And even with those 90 days, you have to pay compensation, right? Absolutely. There's a formula for compensation in 1333.85d, absolutely, which goes to the one of the factors considered preliminary injunction is that this is, you can compensate for this. You can compensate for a break, but I'm jumping ahead, but I did cite that statute as far as... Do you have any cases where it's decided that a European or anywhere in the world other than the state's manufacturer who goes through an importer who then goes with the distributor does not have the franchise relationship with the distributor? Any Ohio cases that say that? No, Your Honor. There are none based on our research, and there are none offered by either party, so they do not exist that I know of. Can you tell me, Counsel, I have kind of two related questions. In your reading of the one manufacturer that's part of the franchise agreement, and second, can you tell me what is the test that we apply for determining, especially if there can only be one, who among multiple people who are part of this process, is the manufacturer as defined by the act? So to your first question, Your Honor, no. They use the singular in the statute, and I believe that there is a place for one manufacturer under the statute. I do recall Judge Cole discussed the possibility of two, and I assume it could be possible, but I don't believe that was anticipated by the statute based on the tense they chose. In regard to how do you determine a manufacturer, is that the second part of your question, Your Honor? If we have, you know, in this instance, but you can even think in more instances, that the chain is even longer between the person who makes the recipe and brews the beer, and then maybe gets sold to a wholesaler in Europe, someone else, maybe they contract with someone else to import, then we're down to distributors. How do we decide who has this franchise relationship with the distributor? As the Court's aware, the control issue is dealt with in some of the cases that were brought up, the ability to terminate, which I know was focused on by my adversary, and the trademark, but that's not it. It's also who decides how it's sold, where it's sold, who markets the beer, who controls the beer once it crosses our border. And so, back to what Judge Blomkamp is asking, if you have, let's just say it was more equal between a manufacturer and a supplier than you posited it is here, right? So the evidence here shows that Shelton Brands did a lot of that stuff, other than produce and maybe the trademark. Although you have the Shelton Brands label, we can, I mean, the fine-tuning of that is fine. But how do you decide if it's more balanced than that? In other words, what do we do when they're kind of co-equals? Who holds the franchise in that instance? Your Honor, I don't have a great answer for you on that. I haven't read any case law that gives me instruction. From my point of view, as on behalf of my client, I would say that at some point in time, someone would have to have, if it's exactly equal control, is that your scenario, sir? Yeah, as close as you can get. So I believe it's possible they both could be bound. I don't think the statute allows for that, but I think a court could interpret that that way if they chose. Okay. But you say when the statute says a person, it means one? That's my argument, Your Honor. And Lime is now a manufacturer? Under the Ohio statute and the relationship with Sixth City, yes, they are. Absolutely. Because they are controlling the sales, the distribution, who actually gets the beer, and that's a big thing. And there's a big difference. I'm sorry. No, go ahead, Your Honor. I know you do this in your brief, but why don't you talk to us about Bovino and the Bovino case? Because your friend's right that both were sued there, the manufacturer and the importer. And the court was not careful in distinguishing there. I thought my reading of it was it was addressing both. And whoever maintains control over the brands can then terminate that relationship. In Bovino, I don't think it is, obviously it doesn't mirror our facts. We have a successor manufacturer and we have a bankruptcy. So very different statutes for how they're attempting to terminate the relationship. It discusses control and can assist in determining control, but I don't think it is... But in both those cases, in both St. Killian and Bovino, as I understand them, and you should again correct me, I thought the courts held that when a foreign brewery switches the importer, the new importers are bound by the old importer's franchises. So you remember my first question to your friend, and he eventually came around to this. I mean, why doesn't that answer it, at least under Ohio law, that it would give us the authority? Because the facts are very different. Because in the St. Killian case, we're talking about Salzburg, which is a gigantic brewery, which has tentacles everywhere and a lot of control. They do their own marketing. They decide where their beer is going. There can be many variations of an importer, your honor. It could simply be a truck saying, go bring it there. So if the manufacturer is deciding which distributors are getting the beer, we can enjoin both the manufacturer and the importer? Under my reading of the law, that there only can be one, I think it would be the manufacturer who would have to direct the importer. And there would have to be a party to the action as well. Right, I understand that. So, I mean, this bankruptcy situation appears to be somewhat unique. But, and I know this is not a successor case. It wasn't argued that way, and you didn't act in accordance with that provision. But doesn't that give you some indication that the legislature felt that there had to be some continuity? That there needed to be some restriction on a successor manufacturer? That it couldn't just be that, you know, the old manufacturer is out and therefore all the cards are off the table and you start over again. It's an interesting scenario, your honor, because as manufacturers, we all know based on the statute, can be either the producer or supplier. And in a case where the supplier is considered the manufacturer and then enters bankruptcy. That's what you're arguing. Exactly. And it's a unique fact pattern. I don't think that maybe it wasn't anticipated by the legislature. I'm not sure, your honor. But the fact is, Shelton Brands was what was being sold by Cavalier and Shelton Brands no longer exists. So, which was a group of beers and very niche, infinitesimally small companies. If I didn't answer your question, your honor, I apologize. Please let me know. The statutory provisions about successor manufacturers say here that you need to acquire all or substantially all of the stock or assets of another manufacturer or be the assignee of a particular product or brand. Does that apply to Lime here or did you guys just buy some extra stock? Like actual stock of beer? Well, it's not in the record, your honor. I can answer the question, but it wouldn't be in the record based on my experience with my clients. We stick to the record. So, no, and that's, to my other point, the appellate needs to meet their burden and they didn't. The evidence before the court was really not that detailed. No one from Shelton Brothers was called. No one from the brewer was called. No one from Cavalier who had a better understanding of the relationship with Shelton Brothers and the brewers were called. Maybe I misunderstood your brief, but at one point, were you referring to, I didn't go check the source and maybe I should have, you talk about a representative of Cavalier and what they said. I'm pretty sure it's in your brief. Mr. Eberle, yes. Yeah, okay. Whose brief was it in? I'm sorry. I think we both referenced Mr. Eberle's testimony. So he did testify? He did, but he didn't have, he absolutely testified, your honor. But my point was there wasn't a witness presented that had detailed knowledge of the relationship between Shelton Brothers and the brewers, which is really what we're analyzing here. Obviously, in my view. So there wasn't a witness called by the appellant to establish the control by the breweries that would be necessary to create that franchise relationship with them. The only evidence before the lower court was all of the different acts of Shelton Brothers did to develop their brands, which I argue is why they had control and they were the manufacturer under the Ohio law in this situation. So are you still selling Shelton beer? Lime Ventures, it's not in the record, your honor. I don't want to go outside the record. I'll answer the question if you like, but in the record, there's no evidence that they're selling all of Shelton's beer or some of Shelton's beer. That was never asked. No, but are you selling Shelton beer? No. In quotes. In quotes. No, Shelton, the Shelton brand is bankrupt and gone. It's not being represented by my  But you have repackaged the brewer's beer. Yes, the Shelton name is off the label. Once again, I'm trying to tiptoe and stay within the record. I apologize, but there was no evidence to the contrary. Well, isn't it strange that in all other situations, the distributors protected and not in this situation? Well, the distributor was protected, your honor, and the statute allows for the end of the relationship based on a bankruptcy. They enjoyed protection for 15 years with Shelton Brother Brands. What do you say the statute allows? You said something about the statute. Allowing termination based on ending the franchise relationship because of the bankruptcy, your  Where do you see that? In 13... But that's different. That's if they wanted to terminate when Shelton went bankrupt. Shelton Brands ceased to exist when they went bankrupt. I understand that, but you're making it sound like there was something in the statute that said you allowed for termination without notice when there's bankruptcy, your honor. Yeah, but I thought it's by Cavalier. It goes the other way, right? That's the way I read it. That was the first time they argued that was in the reply, your honor. I understand, but it's a legal interpretation, and both Judge White and I seem to be reading it the same way, which is Cavalier can terminate, it says, when the other party goes into bankruptcy. Okay, so if, taking your understanding of that, your honor, then what would happen when a company's out of business and they just decide not to terminate the franchise relationship? It's different with a supplier versus a manufacturer, it is very different. When they go into bankruptcy, the trustee, they have rights within the bankruptcy, so it makes sense that it's a one-way ratchet, but of course a party on the outside, by Ohio giving them the authority to terminate with a bankrupt party, it protects them in a way. It goes to Judge White's theme that the whole theme of this statute is to protect the distributor in some way. I understand. Are there any further questions? No, thank you very much. Thank you, your honors. I'd like to address two points. First, I'd like to go back to the issue of jurisdiction, which I think requires at least a little more explanation. Judge, you had requested a case example, and at the time that you were questioning me, I was not sure whether one of these cases was a specific situation that we have here, but it, in fact, is. In Hill Distributing Company v. St. Kelly in Import and Code, the decision by Judge Marley, the importer, Carlsberg, was not named in that complaint. Nonetheless, Judge Marley issued an injunction, and the injunction that he issued was specifically against the importer of the beer who was enjoined from terminating Hill Distributing's franchise relationship. Now, that would be both expressly or... So that's only a district court, and the only thing I would say is I can't imagine that a court has the authority to enjoin, that's even different than this case, enjoin a non-party. Respectfully, Your Honor, we are not requesting that this court... Yeah, right. No, I know. You're not that broad. We would ask that this court issue an injunction similar to that that was issued in St. Kelly, and I'm simply providing you with the case example...  That's fair. ...of how you could do it. Second, I want to address the issue of control. I want to dispel any notion of the fact that simply because Lime Ventures is putting their names on the bottles, as importers are required to do under federal law, somehow imports and is dispositive of the issue of control. The control that the breweries have here is even greater than in the cases of St. Killian. Here, the breweries have a complete at-will relationship. They can terminate it at time for any reason. In St. Killian, there was a limited number of circumstances in which they could terminate, and the record made clear that one, neither Lime... Why not just claim that... I still have not grasped... I know in your complaint you do, but you never pursue the agency theory. Why not just... The agency seems like the way to get at this. That's why I'm kind of trying to grasp at straws. The agency is an alternative argument that we could potentially pursue, and which... There actually is a second lawsuit where we've named the breweries and are attempting to serve them via the Hague, but it is not required for us to prove an agency theory to prevail in this case. That's why we didn't pursue it, and that's why looking at St. Killian as an example, there's a different avenue. Further, Your Honor, the reason why we decided to go specifically for the importer directly is because service takes so long against the breweries, and my client was being irreparably harmed. We had a sufficient ability, once they refused to sell the beer to us, to file a lawsuit and request a preliminary injunction to prevent any further harm at that time. That's why we did what we did, and we believe that in following in St. Killian, this court does have jurisdiction to be able to issue the injunction that we're seeking. Thank you, Your Honors. Thank you. Thank you both for your argument. The case will be submitted.